UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TATANISHA SMITH,

        Plaintiff,

                                File No. 1:14-cv-1031

v.

                                HON. ROBERT HOLMES BELL

SPECTRUM HEALTH SYSTEM,

        Defendant.

_____/

# O P I N I O N

This is a race discrimination and retaliation action brought by Plaintiff TaTanisha Smith, a home health aide, against her former employer Defendant Spectrum Health System. Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. (ECF Nos. 21, 22.) Plaintiff has responded to the motion (ECF No. 23), and Defendant has replied (ECF Nos. 25, 26). For the reasons that follow, the Court will grant in part and deny in part Defendant's motion.

**I.**

Plaintiff TaTanisha Smith is an African American woman who was employed as a home health aide with Spectrum Health System from 2009 through 2014. Plaintiff had been assigned to a 24-hour care patient who suffered from brain injuries. In March of 2012, however, Plaintiff was removed from the case because the patient, who was white, did not want African American care givers. Plaintiff, along with several other African American employees, filed suit in this Court in January 2014 against Defendant alleging race discrimination. (*Pitman v. Spectrum Health Sys.*, Case No. 1:14-cv-28 (W.D. Mich.) (Bell, J.).) This Court granted judgment on the pleadings because the case was untimely. *Id.*, 2014 WL 3809171 (W.D. Mich. Aug. 1, 2014) (ECF Nos. 14, 15, 16), *aff'd*

— F. App'x —, 2015 WL 2384326 (6th Cir. May 20, 2015).

In March of 2014, Plaintiff requested assignment back to the 24-hour care patient in an effort to increase her working hours. A scheduler who coordinated assignments for aides told Plaintiff, "I can't send you to that case." The scheduler provided no further explanation.

On March 25, 2014, Plaintiff was assigned to a new client on a 2:00 pm to 9:00 pm shift that day. At approximately 2:15 pm, Plaintiff called the scheduler to notify Defendant that she was having difficulty locating the client's residence. While on the phone with the scheduler, Plaintiff arrived at where she thought the client lived. Plaintiff wrote on her time sheet that her arrival time was 2:30 pm. Plaintiff discovered it was the wrong home and arrived at the correct home at 2:45 pm.

Plaintiff did not review the care plan, or "Spectrum book," upon her arrival. Rather, the client's daughter provided verbal instructions for her mother's care. The client's daughter expected Plaintiff to supervise her mother to prevent falling while the daughter ran errands. Plaintiff was limited to the kitchen and living room, and the daughter attended to the client until about 5 pm, when the client emerged from napping. While the client was asleep, Plaintiff occupied herself with games on her cell phone and puzzle books, which she understood was permissible under Spectrum policy. Plaintiff also answered a two-minute personal cell phone call from her own mother, who is disabled. The daughter dismissed Plaintiff at 6:30 pm. Plaintiff completed a Time and Task Form that reported an arrival time of 2:30 pm, departure time of 6:30 pm, and that Plaintiff had read the client's care plan. Plaintiff's Time Sheet, submitted on March 29, 2014, showed that she started work at 2:30 pm on March 25.

On March 26, Plaintiff informed a scheduler that she did not want to be assigned to provide further care for that client because she was "treated undignified." The daughter of the client

contacted Spectrum Health to complain that Plaintiff was late, unhelpful, and used her cell phone.

Plaintiff's supervisor, Maria Sobol, scheduled an investigatory meeting with Plaintiff and a Human Resources representative, Molly Getchell, on April 1 and again on April 7 to discuss the daughter's concerns. The daughter did not cooperate in the investigation or provide any information other than the phone call. During the investigatory meetings, Plaintiff explained that she wrote a 2:30 pm start time on her time sheet because that was the time she arrived at the wrong home. It was her custom to write down her start time as she pulled up to her destination. She admitted that she should have corrected the start time to 2:45 pm. She also said that she should have asked for the care plan book. Plaintiff described her interactions with the client and her daughter and her feeling that the daughter was racist. At the conclusion of the April 1 meeting, Plaintiff inquired what would happen next and whether she would receive a disciplinary write-up or be terminated. Ms. Getchell said that she did not know what would happen next. At the April 7 meeting, Plaintiff said she had been kicked off of a case because of her skin color so she knows what that feeling is. Plaintiff asked if she needed a lawyer to protect herself.

On April 14, 2014, Defendant terminated Plaintiff's employment because she arrived late for her shift, falsified her time sheet, and acted unprofessionally by lying during an investigation when she did not admit to using her cell phone for a personal phone call, by falsifying that she had reviewed the client's care plan, and by assisting the client, who had dementia and poor motor skills, to sign and verify her time sheet.

Plaintiff filed this action on October 1, 2014, alleging retaliation under 42 U.S.C. § 1981 and the Michigan Elliott-Larsen Civil Rights Act, and race discrimination under 42 U.S.C. § 1981 and Title VII. (First Amd. Compl. ECF No. 14.) Defendant has moved for summary judgment on both

the retaliation and discrimination claims.

## II.

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In reviewing a motion for summary judgment this Court cannot weigh the evidence, make credibility determinations, or resolve material factual disputes. *Alman v. Reed*, 703 F.3d 887, 895 (6th Cir. 2013); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (stating that on a motion for summary judgment "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"). "[T]he district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). Nevertheless, the mere existence of a scintilla of evidence in support of a non-movant's position is not sufficient to create a genuine issue of material fact. *Liberty Lobby,* 477 U.S. at 252. The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

## III.

Defendant moves for summary judgment on Plaintiff's retaliation claims under the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"), Michigan Compiled Laws § 37.2101, and 42 U.S.C.

§ 1981. The familiar *McDonnell Douglas* burden shifting framework applies to both state and federal claims. *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 674 (6th Cir. 2013); *Harris v. Metro. Gov. of Nashville & Davidson Cnty.,* 594 F.3d 476, 485 (6th Cir. 2010);  *Mick v. Lake Orion Cmty. Schs.*, 706 N.W.2d 725, 725-26 (Mich. 2005). To establish a prima facie case of retaliation, a plaintiff must show that (1) she was engaged in a protected activity, (2) the activity was known to the defendant, (3) the plaintiff suffered an adverse employment action, and (4) a causal connection existed between the protected activity and adverse action. *Harris*, 594 F.3d at 485. Once the showing is made, the defendant must articulate a legitimate, nonretaliatory reason for its action; then the burden shifts back to the plaintiff to show that the proffered reason was merely a pretext for retaliation. *Id.* (citing *Ladd v. Grand Trunk W. R.R.*, 552 F.3d 495, 502 (6th Cir. 2009).

ELCRA also requires a showing that the plaintiff's protected activity was a "significant factor" in the employer's adverse action. *Mickey v. Seidler Tool & Die Co.*, 516 F.3d 516, 527 (6th Cir. 2008). To show that her activity was a significant factor, a "plaintiff must present evidence sufficient to raise the inference that [her] protected activity was the likely reason for the adverse action." *Id.* at 527-28 (citing *In re Rodriguez*, 487 F.3d 1001, 1011 (6th Cir. 2007) (citations omitted)). *See also Fuhr*, 710 F.3d at 675 (quoting *Upshaw v. Ford Motor Co.,* 576 F.3d 576, 588 (6th Cir. 2009) (Under federal law, a "causal connection is established when a plaintiff proffers 'evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action.'").

The parties disagree about what constitutes Plaintiff's protected activity. Spectrum would limit the protected activity to Plaintiff's March 26 request for the scheduler to be removed from providing care for the client and her allegations at the April 1 and April 7 investigatory meetings that

the client's daughter was racist. Plaintiff, however, includes her prior lawsuit against Defendant for

unlawful discrimination as a protected activity. Defendant points to Plaintiff's deposition in which

she fails to reference the prior lawsuit as a basis for her retaliation claim, but that argument lacks

merit. Plaintiff undoubtedly engaged in protected activity when she filed a discrimination lawsuit

against Defendant in this same Court in *Pitman v. Spectrum,* 1:14-cv-28 (W.D. Mich.) (Bell, J.). *See*

*Fuhr,* 710 F.3d at 675 (recognizing a prior discrimination lawsuit was protected activity). Moreover,

Plaintiff stated, "I guess I'm not really understanding what you're trying to ask me" in response to

Defendant's multiple questions regarding the basis of her retaliation claim. (Smith Dep. at 92:10-11,

ECF No. 22-1, Ex. 1.) The deposition questions did not ask for facts, but required Plaintiff to

describe legal theories. Plaintiff's confusion in her deposition does not estop the court from taking

judicial notice of her prior lawsuit against Defendant alleging unlawful discrimination. Accordingly,

Plaintiff's prior lawsuit constitutes protected activity for the purposes of this retaliation action.

Defendant seeks summary judgment because Plaintiff cannot establish a causal connection

between her protected activity and her termination. Defendant contends that no causal connection

exists because Ms. Getchell and Ms. Sobol were not aware that Plaintiff had complained that the

client's daughter was racist. However, both Ms. Getchell and Ms. Sobol learned of Plaintiff's

complaint at the time of the April 1 meeting. (April 1, 2014, Meeting Notes, ECF No. 22-15, Ex. 15.)

Thus, Ms. Getchell and Ms. Sobol were aware of allegations of racism prior to their decision to take

adverse employment action against Plaintiff. Defendant's claim that Plaintiff raised the racism

allegation to insulate herself from discipline is a question of credibility, which is not an appropriate

issue on summary judgment. Plaintiff has sufficiently established a prima facie case that Defendant

knew she had engaged in protected activity.

Plaintiff argues that the temporal proximity between her April 1 allegations of racism and her April 14 termination suggests a causal connection supporting an inference of retaliation. Defendant disagrees that timing alone could establish a causal connection. (Def.'s Br. in Supp. of Mot. for Summ. J. 11, ECF No. 22.) The Sixth Circuit, however, recognizes that "[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey*, 516 F.3d at 525 (citing a case where a one and one-half month period between the protected activity and adverse action might, by itself, establish causation). Here, approximately 13 days elapsed between when Ms. Sobol and Ms. Getchell learned of Plaintiff's allegation and when Plaintiff was terminated. Such a short period is sufficient to establish a causal connection to satisfy a prima facie claim of retaliation. *See id*. (citing *McNett v. Hardin Cmty. Fed. Credit Union*, 118 F. App'x 960, 965 (6th Cir. 2004) (finding causation based on a 13-day period between the protected activity and adverse action); *Shefferly v. Health Alliance Plan of Mich.*, 94 F. App'x 275, 285 (6th Cir. 2004) (three-week period)).

Defendant proffers a legitimate, nonretaliatory reason for firing Plaintiff: she was late, she falsified her time sheet, she was on her phone, and she acted unprofessionally. Plaintiff says that these reasons are merely pretext. "Under the law of our circuit, a plaintiff can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (internal quotation marks and citations omitted).

Plaintiff has offered evidence that Defendant's reasons were false, and retaliation was the true reason for its action. First, Plaintiff rebuts the claim that she falsified her time sheet. She had a logical reason for writing down 2:30 pm as her start time, and she admitted that she should have corrected her time sheet. Under Defendant's pay policy, Plaintiff was entitled to claim payment until the official end of her shift at 9 pm. However, Plaintiff only claimed payment until 6:30 pm, the time she was dismissed. Had Plaintiff intended to falsify her time sheet or to be overpaid, she would have written 2 pm as her start time and 9 pm as her end time on her time sheet. Defendant saved money because Plaintiff accurately reflected her end time. Second, Plaintiff has a history of strong performance reviews that do not indicate a pattern of lack of professionalism. Third, Defendant did not initiate the usual disciplinary process by providing a written warning or documenting corrective action leading to her termination. In the termination form prepared by Defendant, the box labeled "Prior Performance Discussions" contains no content. Finally, Plaintiff points out that Defendant was still using a race-based method of assigning caregivers to patients as of January 2015.

To defeat a summary judgment motion in such circumstances, the "plaintiff must produce sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendants . . . did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action." *Id.*(quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001)). Even if Defendant had grounds for termination, its lack of adherence to its own disciplinary process and/or failure to explain how the termination was consistent with the disciplinary process, calls into doubt whether Plaintiff's tardiness and time sheet were the reasons for her termination.

Plaintiff has presented sufficient evidence to raise the inference that her engagement in a

prior lawsuit and complaints of racism were motivating factors for the adverse action. Thus, Plaintiff has met her initial burden of establishing a prima facie case of retaliation. Defendants' motion for summary judgment on the retaliation claims will be denied.

**IV.**

Defendant moves for summary judgment on Plaintiff's race discrimination claims because Plaintiff is attempting to revive her former suit, and Plaintiff cannot demonstrate that there were any staff openings available for her to fill on the white patient's schedule. Plaintiff contends that Defendant has engaged in a long-standing policy of discrimination, and its refusal to put her on the schedule, evidenced when the scheduler told her, "I can't send you to that case" (Smith Dep. 90:7-8), is a specific act constituting discrimination. Plaintiff adds belatedly that the Lily Ledbetter Fair Pay Act of 2009 applies to her case because she has suffered reduced compensation by not being re-assigned to a 24-hour care patient who required more staffing hours.

To establish a prima facie claim of racial discrimination under Title VII, a plaintiff must show that (1) she is a member of a protected class, (2) she is qualified for the position, (3) she suffered an adverse employment decision, and (4) she was replaced by a person outside the class or she was treated differently from similarly situated non-protected employees. *Newman v. Fed. Exp. Corp.*, 266 F.3d 401, 406 (6th Cir. 2001). Both parties failed to address the legal elements of this claim, but they seemingly dispute the third and fourth prongs.

Plaintiff has produced evidence that, as of January 2015, Defendant was not assigning African American caregivers to a white patient, and had removed African Americans from that patient's care team. (*See Sobol Dep.* 11:16-13:11.) The scheduler told Plaintiff that she could not assign Plaintiff to that white client. Defendant argues that the scheduler's reason for not assigning

Plaintiff to the white client was that there were no openings available. The scheduler, however, did not specify whether there were openings, whether there was a substitution or back-up list that Plaintiff could get on, or whether Plaintiff could not be assigned to the client because she was not white. Thus, there exists a question of fact whether Defendant was treating Plaintiff differently from white caregivers.

Plaintiff is not merely reviving her former lawsuit. She has produced evidence that Defendant continues to use race-based assignments. There exists a genuine question of material fact whether Defendant discriminates against African American caregivers and whether she was prevented from obtaining a preferable assignment because she is African American. Defendant's motion for summary judgment on the race discrimination claims will be denied.

Plaintiff's claim under the Lily Ledbetter Fair Pay Act of 2009, 42 U.S.C. § 2000e-5(e)(3)(A) lacks merit. The Second Circuit recently analyzed a similar claim, in which a plaintiff claimed that disability-based discrimination resulted in her demotion, and thus lower compensation, in violation of the Act. *Davis v. Bombardier Transp. Holdings (USA) Inc.*, Case No. 14-289 (2d Cir. July 22, 2015). The Court ruled that the Act's reference to "discrimination in compensation" "was to traditional pay-discrimination claims rather than to a pay reduction that flows from another adverse employment action." *Id.* (noting the court's conclusion is consistent with other circuits in *Almond v. Unifed Sch. Dist. #501*, 665 F.3d 1174, 1175, 1180-81 (10th Cir. 2011); *Noel v. The Boeing Co.,* 622 F.3d 266, 274 (3d Cir. 2010); *Schuler v. PriceWaterhouseCoopers*, 595 F.3d 370, 374-75 (D.C. Cir. 2010)). Plaintiff's argument that Defendant's discriminatory assignments led to fewer hours, and thus lower compensation, does not assert a traditional pay-discrimination claim. Accordingly, the Act does not apply to Plaintiff's claims. Defendant's motion for summary judgment for claims under

the Lily Ledbetter Fair Pay Act will be granted.

**V.**

For the foregoing reasons, the Court denies in part and grants in part Defendant's motion for summary judgment.

The Court will issue an order consistent with this Opinion.

Date:    <u>August 6, 2015</u>                                    /s/ Robert Holmes Bell
                                                    ROBERT HOLMES BELL
                                                    UNITED STATES DISTRICT JUDGE